Hogg, Appellant, *v.* Muir.

Argued November 16, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Irwin N. Rosenzweig,* with him *Kaiser & Karabel,* for appellant.

*Thomas E. Comber, Jr.,* with him *Perry S. Bechtle,* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 3, 1956:

On February 9, 1953, James G. Hogg was driving his automobile southwardly on Stenton Avenue, a

"Through" highway, in Springfield Township, Montgomery County. As he approached Northwestern Avenue, which bisected Stenton, he looked to the left (toward the East) and saw no traffic approaching from that direction. He then looked to the right, but this view of Northwestern Avenue on the western side was obstructed by a bank of dirt some 6 or 7 feet high. He reduced his speed from 25 to 15 miles per hour and entered the intersection, when there appeared to his right a car some 35 or 40 feet away, bearing down on him at such speed that collision seemed inevitable. He applied his brakes and had reached a point about two-thirds of the distance across Northwestern when the other car (driven by Robert F. Muir, the defendant in this lawsuit) struck him and continued on to smash through a fence and finally stop in a field a hundred yards away.

In the resulting lawsuit, the trial judge in the Court below entered a compulsory nonsuit on the ground that Hogg was guilty of contributory negligence as a matter of law. The record does not support such a conclusion.

While there is a duty on the part of a motorist to look to the left and right before committing himself to a street crossing, the law does not demand the accomplishment of the impossible. When a motorist is travelling on a Through street and his view in either lateral direction is obstructed by a physical obstacle, he has the right to proceed, with appropriate caution, on the assumption that automobilists approaching from the blind side will observe traffic laws and rules of the road. The approach into Stenton Avenue was guarded by a Stop sign which the defendant ignored, but there was no way for the plaintiff to know that the defendant would do this.

In his opinion refusing to take off the nonsuit, the trial judge performed an excavation which the record

does not justify. He removed the dirt bank on the western side of Stenton Avenue, stating: "If the dirt bank had extended out into the highway, his failure to look *before* entering the intersection would be excused, but he would, of course, have to look as soon as he had a clear view. However, the so-called dirt bank in this case was not anything like that. It was just the elevation of the rounded point of the lot at the corner beyond which there was a space to what was referred to here as the imaginary curb line of Northwestern Avenue before its roadway began."

This is either an imaginative conception or a picture drawn from a voluntarily-created image because the testimony does not portray such a view. The trial judge said also: "Under cross examination, plaintiff testified that the so-called bank was rounded to an angle, making it possible for a driver *to see Northwestern Avenue upon approaching*." (Emphasis supplied)

The plaintiff did not say that he could "see Northwestern Avenue upon approaching." The trial judge's conclusion is apparently based on a fragmentary and inconclusive statement in cross examination which reads as follows: "Q. It [northwestern corner of Stenton and Northwestern Avenue] is rounded as you come down Stenton Avenue; that high bank sort of goes around in a curve? A. Yes, not a fairly sharp curve as compared to across the street. Q. Therefore, you can see at sort of an angle of some slight degree as you approach? A. Yes, sir."

The plaintiff's answer of "Yes" to the question as to whether "you can see at sort of an angle of some slight degree as you approach" is a far cry from saying that he could see up Northwestern Avenue and catch sight of the defendant's car before he, the plaintiff, actually got into the intersection.

The trial judge said further in his opinion refusing to lift the nonsuit: ". . . there was no testimony in the case whatever that from the rounded point of the lot out to the point two feet out in the intersection where plaintiff looked there was any obstruction whatever to a proper view. It was on that basis that we entered the nonsuit."

But this statement overlooks the plaintiff's testimony where he specifically said: "On my right there was a bank at the corner, which is possibly six or seven feet high, *so I couldn't see up Northwestern Avenue* or to the west as I travelled south." (Emphasis supplied).

A nonsuit cannot be predicated on a so-called absence of testimony when there is nothing to contradict the plaintiff's evidence which negates contributory negligence. The plaintiff did all that it was humanly possible for him to do. He looked to the west up Northwestern Avenue when he first had the facility to look, namely, when he had crossed the imaginary line coinciding with the northern boundary of Northwestern Avenue. He said that he was 2 feet within the intersection when he looked. The record does not indicate whether he meant that it was the front end of his car or himself that was within the intersection at this moment. When a motorist describes the position and action of his car he often merges the car with his own personality and thus speaks of the car in the first person. Thus when Hogg said he was 2 feet within the intersection he well could have meant that the anterior part of the automobile was at this point, and it would then follow, since he naturally would be 2 or 3 feet behind the front of the car; that he looked to his right at the first instant the angle of view allowed him to do so. In any event, it would be for a jury to determine what he meant. A nonsuit can only be entered when the vaguenesses, doubts and uncertainties have been swept out of the

picture and only the steel etching of unquestioned fact occupies the center of the frame of decision.

A car travelling at 15 miles per hour moves 22 feet in one second which means that whether it was the car or the motorist which was 2 feet within the intersection, only one-eleventh of a second passed between the moment the plaintiff freed himself of the dirt pile and the moment the defendant's car came into view. The law covering automobile collisions is not so microscopically precise that a decision of nonsuit can be based on what flashes through a person's mind in the matter of one-eleventh of a second. Certainly where so lightning an instant is to be the criterion of decision, reasonable minds could well differ as to the meaning to be imparted to the action, and therefore it is the jury, and not the Court, which determines whether the individual involved acted in a reasonably prudent manner under the circumstances.

The situation involved in this accident is not so extraordinary or bizarre that it has not already played a part on the stage of *stare decisis*. In the case of *Jones v. Williams*, 358 Pa. 559, 562, the plaintiff could not see the defendant's car as he approached the intersection because a bridge abutment and parked cars impeded his line of vision. He first saw the defendant's car when it was only 25 feet away from him. In allowing a recovery this Court said: "John W. Jones had a right to assume that traffic would heed the 'Stop Sign' and not enter the intersection at a rate of speed which would make likely a collision with his Chevrolet car. When he saw the truck had not stopped but was approaching his path he 'swerved right and threw on the brakes'. This is all he could do."

This Court absolved the plaintiff from the charge of contributory negligence in the following language: "Jones cannot be adjudged negligent for committing

himself to the intersection, for with a 'Stop Sign' facing the truck before it got into the intersection he had a right to assume that no vehicle coming from the left into the intersection would enter the intersection at a speed of 16 or 18 miles an hour. Jones' only error was his reliance on the belief that the 'Stop Sign' would be heeded. The assumption that another driver will obey the traffic rules cannot be adjudged negligent unless the person making the assumption has timely warning that his confidence in the other's lawabidingness is misplaced." (p. 564).

The plaintiff in the case at bar was familiar with the intersection in which the accident occurred and knew of the "Stop Sign" on Northwestern Avenue. He had the right to expect that the defendant would respect that sign, especially since there was nothing to warn him that the defendant might not obey the law.

In the case of *Balser v. Reith,* 161 Pa. Superior Ct. 187, the Superior Court held that, with a plaintiff travelling on a Through highway, it was for the jury—and not for the Court as a matter of law—to determine whether he was guilty of contributory negligence for entering an intersection when his view of the traffic on the intersecting street was shut off because of an intervening brick building and a parked truck.

In *Boehm v. Heston,* 325 Pa. 89, the plaintiff's view of the intersecting street, as in the case at bar, was obstructed by a high bank. This Court refused to hold the plaintiff guilty of contributory negligence as a matter of law, declaring that his conduct under all the circumstances was a question of fact for the jury.

There are other cases, unnecessary here to relate or enumerate, declaring that a motorist travelling on a Through highway has the right to expect, in the absence of notice to the contrary, that a motorist advancing on an intersecting "Stop Highway" will heed the laws of

the land. When unusual circumstances intrude, such as intervening objects which curtail the view, it is a question of fact for the jury to decide whether under all the circumstances the Through highway motorist exercised due caution and care. If the Court below had followed those cases, a nonsuit could not have been entered.

Judgment reversed with a venire facias de novo.